NELSON MERRILL, Appellant, *v.* THE FARMERS' LOAN AND TRUST COMPANY, Respondent.

*Trustee of a mortgage — duty of, as to bondholders — when liable to one injured by his neglect of duty.*

When a mortgage, given to secure the payment of bonds issued by the mortgagor, is executed and delivered to a person in trust for the security of those who may thereafter become the owners of the bonds, and such trust is accepted, and an indorsement to that effect made upon each of the bonds, a duty is imposed upon the trustees of enforcing the mortgage against the property, in case default is made in the payment of the bonds, and of making such a disposition thereof as will best promote the interests of the bondholders.

The duty so imposed upon the trustee is a personal one, and he cannot divest himself of it by delegating its performance to any other person or persons.

Where a trustee of a mortgage, given by a railroad company to secure the payment of bonds issued by it, upon the application of persons claiming to own a majority of the said bonds allowed the applicants to institute proceedings in

its name to foreclose the mortgage, and to carry on the proceedings to final judgment and sell the property thereunder, the trustee paying no attention to the said proceedings, but leaving them wholly subject to the control and direction of such persons, *held*, that the trustee was liable to a holder of one of the said bonds for the damages sustained by him, by reason of its neglect to faithfully perform and discharge the duties imposed upon it by the acceptance of the trust.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

*Nelson Merrill*, in person, and *A. E. Blackmar*, for the appellant.

*Herbert B. Turner*, for the respondent.

DANIELS, J.:

The plaintiff brought this action as the owner of a bond for the sum of $1,000 issued by the Milwaukee and Beloit Railroad Company on the 8th day of March, 1857. Possession of the bond had been acquired by a person in whose hands it had been placed, with many others, for the purpose of making a sale of them. No sale was in fact made by him; but when he was required to return the bonds he retained this one with either three or five others. A public sale was afterwards made of it, at which the plaintiff became its purchaser without notice of what had previously taken place, for the sum of $234.22. This bond was negotiable by its terms, and upon the sale the plaintiff for that reason acquired a good title to it. The bond was one of a series of 630, each made for the sum of $1,000, and secured by mortgage upon the property of the railroad company, subject to certain exceptions not requiring to be noticed in the disposition which should be made of this case. The mortgage by which the bonds were secured was made and delivered to the defendant in this action. It in terms conveyed the property mentioned and described in it to the defendant in trust for the security of the persons who might become the owners of the bonds, and in case of default in payment, authority was given to sell the mortgaged property and to pay the proceeds, so far as they might be required for that purpose, in satisfaction of the principal and interest due upon the bonds The mortgage was accepted by the defendant, and an indorsement was also made upon each of the bonds showing that they were

secured, and that the defendant held the mortgage in trust for the use and benefit of the holders of the bonds, with power to take possession of and sell the property in case of default in paying the interest or principal of the bonds or any of them. By this instrument and the acceptance of it by the defendant, a trust in fact and in law, as well as in name, was created for the security of the persons who purchased the bonds secured, and in case of default the trusts at once became active and important in favor of the creditors. It imposed upon the defendant in their behalf, the duty of enforcing the mortgage against the property and making such a disposition of it as would best promote their interests. In trusts of this nature, responsible, reliable and intelligent parties are commonly selected to receive them, for the purpose of assuring the creditors that they will be faithfully executed for their benefit, and their interests in the property protected as far as that can be done by fidelity and attention on the part of the trustee. As to these securities, it has very properly been said that the salability of the bonds depends in no inconsiderable degree upon the character of the persons who are selected to manage the trust. If they are of well known integrity and pecuniary ability, the bonds are more readily sold than if this were not the case. It is natural that it should be so, and on this account the trustees usually appointed in this class of mortgages are persons of good reputation in the cities where the bonds are likely to be sold. To change them is to change the contract in an important particular, and this cannot be done without the consent of the parties for whose benefit the trust was created. (*Knapp* v. *R. R. Co.*, 20 Wallace, 117–123.) And so long as such a trustee does not refuse to discharge the trusts reposed in it or him, other parties have not been authorized to institute or prosecute any proceedings for the enforcement of the mortgage, or to exercise any control over it. (*Coal Co.* v. *Blatchford*, 11 id., 172–174.) And when an action is brought by the trustee to enforce the mortgage, so important and complete is the authority which the law allows to be exercised, that the creditors are not ordinarily permitted to be parties to the action (*Kerrison* v. *Stewart*, 93 U. S. Rep., 155–160 ; *Shaw* v. *Norfolk R. R. Co.*, 5 Gray, 162), their rights and interests being exclusively confided to the care and protection of the mortgagee.

In these respects a complete trust is reposed in the mortgagee, and

the general rules of the law of trusts are for that reason rendered applicable. (*Sturges* v. *Knapp*, 31 Vt., 1.) Whenever default has taken place and a forfeiture occurs by reason of the non-payment of either the principal or interest of the debt, the duties of the trustee are rendered responsible, critical and active. It is then required to act discreetly as well as judiciously in making the best use of the security for the protection of the beneficiaries, and that duty is personal to the trustee, and it cannot divest itself of its responsibility by delegating its performance to any other person or persons. (*Wilkinson* v. *Parry*, 4 Russ., 272; *Chalmer* v. *Bradley*, 1 Jacob & W., 51–68; *Wilson* v. *Towle*, 36 N. H., 129; *Hawley* v. *James*, 5 Paige, 318–487; *Newton* v. *Bronson*, 3 Kernan, 587; *Suarez* v. *Pumpelly*, 2 Sandf. Ch., 336–340.) While the defendant did not in terms transfer the mortgage which it held to others, it did so in effect by committing to them the execution of this important trust, and the persons to whom that was done were not such as would probably promote the interests of other creditors than themselves. They were the holders of the larger part of the bonds secured by the mortgage, who evidently desired to control it for the purpose of advancing their own interests alone. It appeared that the work of constructing the railroad was let by contract to the firm of Mullins & Co., composed of William and James Mullins, Duncan McDonald and J. N. McCollough. The work proceeded under the contract until June or July, 1858. During that time nearly, if not quite, three hundred thousand dollars were expended in that which was performed. Then the company failed to keep up its payments to the contractors, and the further prosecution of the work was suspended. A settlement took place between the contractors and the railroad company, and they received from it one hundred of its thousand dollar bonds for the sum of $80,000. After that one of them, and two other persons with him, acquired the possession of upwards of four hundred more of the bonds and deposited them with those they had previously taken from the company, with the defendant in this action.

They then claimed to own 524 of the bonds of the company, secured by the mortgage held by the defendant, and they in writing requested the defendant to foreclose the mortgage and have the road sold for the benefit of the bondholders.

It was further stated in the instrument subscribed that a bill of complaint was in preparation by Mr. Randall, who had been employed as attorney to conduct the proceedings, so as to bring the matter to a speedy close, and by the same instrument they agreed to indemnify and save the company harmless against all costs and charges growing out of the foreclosure suit, and from any personal trouble in the matter, except that of verifying the bill of complaint.

Mr. Randall had, at that time, been employed by these three persons to take charge of the foreclosure case, and they paid him as their lawyer.

The defendant assented to this application which was made to it, and allowed the proceedings to be instituted and carried on for the foreclosure of this mortgage by Mr. Randall and another person selected by him in Milwaukee to look after the suit. The action was instituted and carried on to its final completion without the least attention to it on the part of the defendant. The proceedings were as fully and completely subjected to the control and direction of these persons, and the other contractors interested in the bonds, as though the mortgage had been given to them for their own exclusive use and benefit. It was a complete surrender by the defendant of the duties and obligations it had incurred by the acceptance of the mortgage and the indorsement made upon each one of the bonds; and that such was designed to be the effect of the arrangement is evident from the acceptance of the agreement, offered to the defendant, by which the three persons who subscribed it undertook to indemnify the company and save them harmless against costs and charges and the actual conduct of the litigation itself. When a judgment in the action had been obtained and the property of the railroad company was about to be sold, the persons to whom the suit had been committed by the defendant held a meeting at which they arranged the manner in which the sale under it should be made, and the terms and amount for which the property should be sold, and the sale took place conformable to the understanding then entered into. The plaintiff had received information of the pendency of the suit, and was to have been informed when the sale would take place, but it appears from his evidence that no information of that nature was in fact received by him.

The parties carrying on the litigation in the name of the defendant so arranged it between themselves as to dispose of the property in accordance with what they believed to be the promotion of their own interests, and when the sale took place the property of the railroad company affected by it was bid off by McDonald, one of the contractors, for the sum of $20,000. That bid was satisfied by the surrender of 524 of the bonds of the railroad company and the payment of $3,322.04, in cash for the remaining bonds outstanding. One of them was the property of the plaintiff in this action, and 100 of the others had been deposited with the city of Milwaukee as collateral security for its own bonds issued in favor of the railroad company. From the statement made of the assets which the company had on hand the 1st day of July, 1858, and the expenditures made for the construction of its road, they together appear to have amounted to near, if not quite, the sum of $700,000, and it is plausibly insisted on the part of the plaintiff that the sale would have produced a much larger sum than that which was bid for the property if the suit had been carried on under the control of the defendant, and it had exercised that attention and oversight which would have been observed by the employment of intelligent, competent and impartial agents upon its part.

It appeared, further, that the 400 bonds already mentioned were not issued by the railroad company itself, but they were taken by individual directors and hypothecated by them to secure debts which they had incurred for money advanced to the company. These bonds, it was stated, had been sold for the payment of such debts and bid in by different individuals, who were induced to sell them to the persons who were allowed to prosecute the foreclosure suit for the sum, in the aggregate, of $38,000. In the proceedings taken in the action these bonds were not even produced for the purpose of substantiating them as charges against the mortgaged property, and it did not appear that the persons who sold the bonds to the individuals carrying on the foreclosure suit had acquired them in good faith for value or without notice, or that they had not been unlawfully put in circulation. Upon the proof which was made neither of these facts can be considered as established, for that reason these 400 bonds appear to have been improperly used, so far as that was done, in satisfying the bid which one of the contractors made for

the purchase of the railroad property, and in that manner the amount which would be otherwise payable in cash upon the plaintiff's bond was materially and largely diminished. The transaction from the commencement to the completion of the foreclosure proceedings was irregular in the extreme. From the commencement, to and including the time when the sale was made, it appears to have been carried on exclusively for the promotion of the interests of the persons who were allowed to take charge of it by the defendant. Its conduct was entirely improper. It violated the duties and obligations to which the defendant had become subjected by the acceptance of the mortgage and the indorsement made upon the bonds, and resulted in a sale which now appears to have been seriously injurious to the plaintiff in this suit.

Somewhat similar dispositions of railway property have already been censured and condemned by the courts (*James* v. *R. R. Co.*, 6 Wallace, 752 ; *Drury* v. *Cross*, 7 id., 299), and the defendant, through whose agency this has been allowed to be accomplished in this case, should not be permitted to escape liability for it. The violation of the duty which it owed to the plaintiff to carry on the foreclosure of his mortgage carefully and effectively, for the protection and promotion of his interests as one of the owners of the bonds secured by it, and of which it had actual notice, was a legal wrong as to him, constituting the proper subject of an action ; and the injury probably produced to him by the disposition which was made of the property, and the satisfaction of so much of the amount paid as was produced by the surrender of the 400 bonds appearing to have been issued without authority, resulted in producing a loss to him for which he is lawfully entitled to claim indemnity against the defendant.

It may possibly be that upon another trial facts may be established, which will justify the course which was taken by the persons to whom the foreclosure of the mortgage was intrusted. If that shall prove to be the case, then the plaintiff will not appear to have been injured by the failure of the defendant to discharge the legal duty which it owed to him, but as the evidence is now presented, no indication is given rendering it probable that such facts can be proven. As the case now stands, the plaintiff had good grounds for complaint, and his action, instead of being dismissed, should have been sustained, and a recovery directed in his

favor for the loss he appeared to have sustained by reason of the improper manner in which the foreclosure proceedings were carried on and consummated.

The judgment should be reversed, and a new trial ordered, with costs to the plaintiff to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.